THE PEOPLE *ex rel.* The City of Chicago, Appellant, *vs.* THE COMMERCIAL UNION FIRE INSURANCE COMPANY *et al.*—(H. C. EDDY, Appellee.)

*Opinion filed June 16, 1926—Rehearing denied October 20, 1926.*

1. INSURANCE—*mandamus will lie to compel agent of foreign fire insurance company to make report to city under act of 1895.* Where a city has adopted an ordinance imposing a tax or license fee on foreign fire insurance companies pursuant to the act of July 1, 1895, *mandamus* is a proper remedy to compel the agent of the company to. make a report of the gross receipts of the agency as required by the act.

2. SAME—*laches will not run against right of city to compel agent of foreign fire insurance company to make report of gross receipts under act of 1895.* As the city tax or license fee allowed to be imposed on premiums received by a foreign fire insurance company by the act of July 1, 1895, is for the benefit of the fire department of the city the tax is for the public benefit, and the right of the city to compel the agent of such insurance company to make report of gross receipts of the agency is a public right created by statute and is not affected by *laches.*

3. SAME—*making of prior incorrect report and change in rate of tax do not preclude mandamus to compel another report of fire insurance agency under act of 1895.* The facts that the agent of a foreign fire insurance company has previously made reports of the gross receipts of his agency under the act of 1895, which reports are incorrect, as admitted by demurrer, and that the city by amendment of its ordinance has changed the rate of the tax or license fee, do not preclude the filing of a petition for *mandamus* to compel the making of another report covering the period prior, as well as subsequent, to the amendment.

4. SAME—*extent to which credit may be given for premiums returned.* In making the report of gross receipts by a foreign fire insurance company under the act of 1895, the company is entitled to credit for the amount actually returned by the company as unearned premiums on canceled policies.

5. SAME—*agent of foreign fire insurance company, under act of 1895, is not required to report premiums on risks outside city.* The act of July 1, 1895, authorizing cities to impose a tax or license fee on premiums received by foreign fire insurance companies for "insurance effected or agreed to be effected in the city," does not authorize such tax on premiums for risks located outside of the city, and the agent of such company is not required to report such premiums, as the tax is for the benefit of the fire department of the city and is limited to the confines of the city. (*People* v. *Kent,* 300 Ill. 324, and *People* v. *Barrett,* 309 id. 53, distinguished.)

6. SAME—*agent of foreign fire insurance company, under act of 1895, is not required to report premiums on policies covering navigation.* The act of 1895 authorizing a tax or license fee on premiums received by foreign fire insurance agencies for the benefit of the fire departments of cities does not apply to premiums collected on policies combining fire insurance with insurance for loss by the perils of navigation, where such insurance is covered by one premium; and the agency is not required to report such premiums, as the act was not intended to apply to contracts of marine insurance.

7. LACHES—*laches does not run against exercise of a public right.* Time does not run against the people in respect to the exercise of their governmental rights and powers, but a city, when acting in a private capacity, may be subject to *laches.*

APPEAL, from the Circuit Court of Cook county; the Hon. PHILIP L. SULLIVAN, Judge, presiding.

FRANCIS X. BUSCH, Corporation Counsel, LEON HORN-STEIN, and BULKLEY, MORE & TALLMADGE, (CLAIR E. MORE, C. PAUL TALLMADGE, and HIRAM T. GILBERT, of counsel,) for appellant.

BATES, HICKS & FOLONIE, and SILBER, ISAACS, SILBER & WOLEY, for appellee.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

The appellant filed a petition for a writ of *mandamus* against the Commercial Union Fire Insurance Company and H. C. Eddy to require Eddy to file a verified and true report of the gross premiums for fire insurance received by him as agent of the insurance company in the city of Chicago from March, 1896, to the year ending July 1, 1919, as required by act of July 1, 1895, requiring that all foreign fire insurance companies shall report premiums received for any insurance effected or agreed to be effected in the city, (Smith's Stat. 1925, p. 429,) and pursuant to an ordinance passed in 1896 under the provisions of said act, which ordinance for the years 1896 to 1899 provided that the license fee be one per cent of the gross receipts of fire insurance premiums, and which by amendment in 1899, effective there-after throughout the period involved, fixed the license tax to be imposed at two per cent. The petition alleged the agency of Eddy, and that during all the time from the year 1896 to the year 1919, both inclusive, he omitted and refused to correctly report premiums for fire insurance risks and hazards on property outside the city; that he deducted and omitted from his report a sum equal to amounts paid by the company to other companies for re-insuring its risks, and deducted and omitted premiums received for fire insurance when that insurance was incorporated in and a part of its marine insurance, and deducted from his report premi-

ums returned on canceled policies. It appears from the petition that Eddy made reports for the years embraced within the petition, purporting to comply with the act, but which reports are alleged to have been false and incorrect and not in compliance with the statute for the reasons above set out. Both the insurance company and Eddy demurred to the petition. The circuit court sustained the demurrer of appellee, Eddy, and dismissed the petition of appellant without passing on the demurrer of the insurance company.

The following points are urged by appellee: First, whether *mandamus* will lie in a case of this character; second, whether in this case the city is barred of its action by *laches;* third, whether the city can require by *mandamus* the filing of a new report when one has been filed; fourth, whether the amendment to the ordinance in 1899 destroyed the right of the city as to reports for years preceding such amendment; and fifth, what premiums should be reported. This last objection does not go to the whole petition but only to the particular items to be included in the report.

This is not an action for the recovery of a license fee levied but to force the filing of the report of premiums as required by statute. The act on which this petition is based provides that all corporations, companies and associations not incorporated under the laws of this State, which are engaged in any city, town or village in effecting fire insurance, shall pay to the treasurer of the city, town or village, for the maintenance, use and benefit of the fire department, a sum not exceeding two per cent of the gross receipts received by the agency in such town, city or village. The act also provides that "every person who shall act in any city, town or village as agent or otherwise, for or on behalf of such corporation, company or association, shall, on or before the 15th day of July of each and every year, render to the city, town or village clerk a full, true and just account verified by his oath of all the premiums which, during the year ending on every first day of July preceding such re-

port, shall have been received by him, or any other person for him in behalf of any such corporation, company or association, and shall specify in said report the amounts received for fire insurance." The act also provides that such agent shall pay the amount fixed by the ordinance of the village as chargeable against the companies, corporations or associations represented by such agent.

It was decided in *People* v. *Kent,* 300 Ill. 324, that *mandamus* is a proper remedy to compel the city agent of a foreign fire insurance company to make a report of the receipts of his agency to the proper officers for purposes of taxation. The act there under consideration was section 30 of the fire, marine and inland navigation insurance act of 1869. The question there decided, however, was whether an agent of a foreign insurance company doing business in Illinois can be compelled by *mandamus* to make returns of the amount of net receipts of his agency. It was there held that such foreign corporation could do business in the State only upon the terms and conditions imposed by the legislature; that the duty to report net receipts having been placed upon the agents of foreign insurance companies by the act, *mandamus* would lie to compel the performance of such duty. This reason and decision apply to the case at bar. While this petition is filed under a different act of the legislature, by section 22 of the act of 1869 it is made unlawful for any agent of a foreign insurance company to transact business for his company without procuring a certificate of authority stating that the company had complied with all the requisitions of the act of 1869. Section 30 of that act provides that nothing in the act contained should be construed to prohibit cities having an organized fire department from levying a tax or license fee, not exceeding two per cent, on the gross receipts of a foreign fire insurance agency operating in such city, which tax or license fee was to be used exclusively for the support of the fire department of the city. The act of 1895 is for this latter

purpose, and explicitly requires that the return be made by the agent of the company.

It is argued that the Statute of Limitations has run. It will, however, be noted that this is a consideration of the sufficiency of the petition on demurrer. The Statute of Limitations can be relied upon only by plea. Moreover, this action, as we have already intimated, is not for the collection of money but to procure the filing of a report of premiums. The Statute of Limitations, therefore, has no place in the discussion of this case.

But it is contended that the People have indulged in *laches;* that they have slept on their rights and therefore are not entitled to this writ. Time does not run against the People in respect to the exercise of their governmental rights and powers. (*Close* v. *City of Chicago,* 257 Ill. 47; *Mecartney* v. *People,* 202 id. 51; *Shirk* v. *City of Chicago,* 195 id. 298; *Catlett* v. *People,* 151 id. 16; *Lee* v. *Town of Mound Station,* 118 id. 304; *Logan County* v. *City of Lincoln,* 81 id. 156; *City of Alton* v. *Illinois Transportation Co.* 12 id. 38.) It is recognized that when acting in a private capacity a municipality may be subject to the lapse of time. *City of Chicago* v. *Dunham Towing and Wrecking Co.* 246 Ill. 29; *Brown* v. *Trustees of Schools,* 224 id. 184; *School Directors* v. *School Directors,* 105 id. 653; *County of Piatt* v. *Goodell,* 97 id. 84; *Ramsay* v. *County of Clinton,* 92 id. 225.

The question then arises whether or not the right of the city of Chicago in this case is a private right or one incident to governmental duty. Appellee contends that it is a private right arising out of a contract, and argues that it has, in effect, been so held by this court in cases arising on the application of section 30 of the act of 1869, requiring that insurance agents list net proceeds for taxation purposes. It is argued that the rule concerning appellee's duty in this case should be, that since such duty is a contractual one, which affects the private and not the public rights of

the city, the latter is subject to *laches* in the matter of enforcing the performance of that duty. Appellant, on the other hand, contends that the People seek only to carry out a public duty and that no contractual relationship between the city and the insurance company exists.

In determining whether or not the right to have these premiums reported is a public or private one, it becomes important to examine the source of that right and whether or not it exists by acceptance or other act, either of the city or the insurance company. It will be seen, on consideration, that the right does not arise out of any act on the part of the city or election on the part of the insurance company, but the duty to make this report is established by the act of the General Assembly, and a refusal or failure to discharge that duty is by the act made punishable by fine or imprisonment. Regardless of whether the right to have the net proceeds of insurance agencies listed under section 30 of the act of 1869 is or is not a contract right, the right of the city in this case has in it none of the elements of a contract. It arises out of the act of 1895 and not out of the ordinance of the city. While it is true the ordinance must be passed in order to determine the rate of license to be levied, yet the report is provided for in the act of 1895 and by it required to be made. That act does not grant permission to the insurance company to do business in this State or in the city, but proceeds on the theory, as does the ordinance involved in this case, that such permission has been secured. The act of 1895, while a part of the general scheme of which the act of 1869 is also a part, is independent of any of the provisions of that statute. The ordinance is but a reiteration of the act in that respect. While the ordinance must specify the rate of the license fee, we are not concerned with that rate nor the collection of the license fee in this case. The petition is based on the act. The purpose is a public purpose. The maintenance of fire departments is the exercise of the police power dele-

gated by the State for the benefit of the public generally and not alone the city in its private capacity. The exercise of the police power is not delegated to cities for the purpose of their private benefit but for the safety, health and general welfare of the public.

Counsel urge that by the provisions of the statute the license fees, when collected, shall be paid to the firemen's pension fund, and are therefore not for a public purpose. This is a misconception of the act. It contains no requirement that the fees shall be so used. It authorizes the use of the fees for that purpose, but also specifies that they shall be paid over for the use and maintenance of the fire department. The maintenance of the fire department is a public purpose and the right of the city to have these premiums reported is a public right. In *Hartford Fire Ins. Co.* v. *City of Peoria,* 156 Ill. 420, it was held that an ordinance similar to the one under consideration here did not purport to grant or authorize permission to do insurance business in the city of Peoria, but, on the contrary, assumed that such authority already existed. The right of the city of Chicago in this case being a public right, *laches* may not be imputed against it, and this objection to the petition can not be sustained. Appellee's first point cannot be sustained.

It is also contended that since reports were made by Eddy for the years involved, he cannot be required to again make reports for those years. The petition clearly avers that the reports made were false, specifying the items omitted, and that they did not give a true return of the premiums. The demurrer admits the truth of these averments. The making of a false report cannot be said to be a compliance with the act. The duty remains to render a report as required by the act. Appellee would, of course, be entitled to credit for payments made under reports filed.

Appellee urges that the amendment of the ordinance in 1899 destroyed the right of the city to a report for the years preceding that amendment. The only change in the ordi-

nance by that amendment was that affecting the rate to be paid. Neither the provisions of the statute nor of the ordinance requiring this report have been changed. The insurance company would, of course, be entitled to have the fees levied at the rate specified by the ordinance in effect during the year covered by the report. As stated, we are not concerned here, however, with the rate to be levied. The objection cannot be sustained.

It is also urged that appellee should not be required to report premiums where a portion thereof has been returned through cancellation of policies. Appellant concedes that appellee is entitled to credit for such portion of unearned premiums as is actually returned, but the petition avers, and the demurrer admits, that the insurance company does not return all of the unearned premiums but first deducts therefrom all taxes and assessments paid on the entire premiums and that the amount so deducted should be considered as premiums not returned. It was held by this court in *German Alliance Ins. Co.* v. *VanCleave,* 191 Ill. 410, in construing the act of 1899, that the two per cent tax imposed by that act on insurance premiums did not apply to premiums actually returned through policy cancellation. The contention that an insurance company may be credited with premiums returned only as the same are measured by the money actually returned will be sustained. Such actual deductions should be shown on the report of premiums received for the year.

It is also urged that appellee should not be required to report premiums received on insurance risks taken on property whose situs is outside the city. In *People* v. *Barrett,* 309 Ill. 53, it was held that the municipality where the agency is located should have the benefit of the tax provided by section 30 of the fire and marine insurance act of 1869 on the business done by a foreign fire insurance company through the agency existing in that municipality. It was in that case also held that a local agent may make

his return through a general agent, but that the return of the general agent should be made to the taxing authorities of the municipality where the local agency is located in order that such municipality may have the benefit of the tax to be derived from such net receipts. Appellant says in its brief that appellee not having argued this point should be considered to have abandoned it. It is argued by appellant, and whether appellee has briefed the question or has ignored it, the question is here for our decision.

The act of 1895 provides that cities and villages are empowered to prescribe the amount of tax or license fee to be fixed, not in excess of two per cent, "and at that rate such corporations, companies and associations shall pay upon the amount of all premiums which, during the year ending on every first day of July, shall have been received for any insurance effected or agreed to be effected in the city, town or villages, by or with such corporation, companies or associations respectively." Whether the appellee should be required to report premiums received on risks taken on property outside of the city of Chicago depends in a large measure upon the construction to be given to the language, "any insurance effected or agreed to be effected in the city." If it be construed as providing that the receipt of insurance premiums from risks taken outside the city shall be considered as effecting insurance or agreeing to effect insurance in the city, then the report by such agency must cover all premiums received from within the State, regardless of the more specific situs of the property. If, on the other hand, insurance is considered as effected or agreed to be effected at the situs of the property the act can apply only to insurance on property located in the city, for the reason that the insurance must be effected or agreed to be effected in the city. If the latter be not the reasonable construction to place on the act there appears to have been no reason for placing the language in the statute, for the legislature needed to provide only that all premiums re-

ceived during the year be reported. By such language the meaning contended for by appellant would have been plain. We are of the opinion that "insurance effected or agreed to be effected in the city" refers to the location of the risk rather than the place of making the contract.

Appellant argues that the construction given to section 30 of the act of 1869 in the *Kent* and *Barrett cases* should be applied here. This is a misconception of those cases. The license fees to be levied under the act of 1869 are for a different purpose. Under that act such fees are to be levied as property taxes are levied, and are to be used for general municipal purposes. The purpose of the levy of the license fees under the act of 1895 is to maintain the fire department of the city where the insurance agency is located. The fire department protects the risks of the fire insurance company in such city and is a direct benefit to the insurance company. It does not protect such risks outside the city and is therefore of no benefit to the insurer of such property. There could therefore appear to be no reason why an insurance company should pay the license tax on the premiums received for risks situated beyond the protective influence of the city fire department. The *Kent* and *Barrett cases, supra,* in nowise hold contrary to this view. The license fee here is of an entirely different character and for a specific purpose, limited in extent to the confines of the city. Appellee's contention that he should not report premiums on risks taken on property outside the city where the agency is located will be sustained.

It is also urged that the act requiring this report does not apply to premiums collected for fire insurance on policies combining such insurance with that covering loss by the perils of navigation, where such policy is covered by one premium. We think this contention also should be sustained. The act of 1895, by the language of its title, applies only to foreign fire insurance companies, and we think it is not intended to apply to contracts of marine

insurance, though they may involve insurance against fire, unless the premiums for fire insurance can be separately specified.

For the reasons given it was error to sustain appellee's demurrer. For this error the judgment is reversed and the cause remanded, with directions to overrule said demurrer and to rule appellee to answer.

*Reversed and remanded, with directions.*